**Opinion filed August 29, 2025**



In The

# Eleventh Court of Appeals

_____

## No. 11-25-00136-CV
_____

## IN RE CLEAR FORK, INC.

### Original Mandamus Proceeding

**M E M O R A N D U M   O P I N I O N**

This mandamus action arises out of a dispute between Clear Fork, Inc., an oil and gas operator, and Red Diamond Energy Services, Inc. (Red Diamond), an oil and gas service provider.

In September 2021, Marcello Vasquez, an employee of Red Diamond, died while providing oil field services to Clear Fork. After the family of Vasquez filed suit in Ector County, Clear Fork filed a separate declaratory judgment action in Taylor County against Red Diamond and Berkley National Insurance Company (Berkley), Red Diamond's liability insurance carrier, seeking to clarify the rights and obligations of the parties under a Master Service Agreement (MSA) between Clear Fork and Red Diamond. Berkley filed a motion to abate the declaratory

judgment action in Taylor County pending the outcome of the Ector County action. The trial court abated the action as to both Berkley and Red Diamond, and Clear Fork now seeks a writ of mandamus compelling the trial court to lift the abatement insofar as it applies to Red Diamond.

We conclude that the trial court did not clearly abuse its discretion when it abated the declaratory judgment lawsuit, and we deny Clear Fork's petition for writ of mandamus.

*Factual and Procedural Background*

In September 2020, Clear Fork and Red Diamond executed an MSA that purported to "control and govern all work performed or to be performed by [Red Diamond] for [Clear Fork]" under subsequent work orders, tickets, or other verbal or written agreements. Among other things, the MSA included mutual indemnity obligations. Those obligations required Red Diamond to "protect, defend, indemnify, and save [Clear Fork] harmless from and against all Claims, 'regardless of negligence or fault' of [Clear Fork] or [Red Diamond], arising in connection [with the agreement]" and "in favor of any member of [Clear Fork] on account of bodily injury, illness, or death." The MSA further provided that the indemnity obligations therein would "apply even though an insurer or other person or entity is required to pay for any claim or make a contribution to such claim."

In addition to its indemnity obligations, Red Diamond was required to carry a commercial general liability policy with at least $1,000,000 coverage per incident. The MSA also required Red Diamond to carry an excess policy with additional coverage of $1,000,000. In both instances, the MSA required Red Diamond to name Clear Fork as an additional insured on the policies.

In December 2020, Berkley issued a commercial general liability policy to Red Diamond with policy limits of $1,000,000 per occurrence. At the same time,

Berkley issued a commercial umbrella liability policy to Red Diamond with policy limits of $20,000,000 per occurrence.

Thereafter, in June 2023, the family of Vasquez brought a lawsuit against Red Diamond and Clear Fork arising out of his death at a workover rig in 2021. In their lawsuit, the family alleges that Vasquez was killed when a braking mechanism on the rig's traveling block failed, resulting in an "uncontrollable descent of the traveling block to the rig floor" and causing Vasquez to be "violently struck in the head by the elevator bell."

After the lawsuit was filed, Clear Fork's liability insurer made a written demand for indemnity on Berkley. Berkley then responded by tendering a defense to Clear Fork under a reservation of rights, asserting that its excess coverage would not be triggered until Clear Fork had exhausted the coverage that was available under its own commercial general liability policy. Berkley further asserted that the coverage available to Clear Fork under the excess policy was limited to $1,000,000 based on the parties' MSA. Clear Fork then filed a separate lawsuit against Berkley and Red Diamond, seeking declaratory relief against Berkley and alleging that Red Diamond had breached its indemnity agreement, as well as its agreement to obtain excess coverage, under the MSA.

The claims that Clear Fork has asserted in the declaratory judgment lawsuit center on two issues. First, Clear Fork maintains that Berkley is incorrect in asserting that all of Clear Fork's primary liability policy limits must be exhausted before Berkeley's excess policy will apply. Second, Clear Fork maintains that, as a result of the terms of the MSA, Berkley should extend a total of $9,000,000 in coverage to Clear Fork.

Although there is a dispute over the extent and nature of Berkley's coverage under the umbrella policy, it appears to be undisputed that Berkley has defended,

and will continue to defend, Clear Fork in the Vasquez lawsuit. Likewise, it appears to be undisputed that Berkley has confirmed its obligation to indemnify Clear Fork under the terms of Red Diamond's commercial general liability policy. That is, Berkley has effectively acknowledged that it will indemnify Clear Fork for the first $1,000,000 of any judgment arising out of Clear Fork's acts of ordinary negligence.[1]

Clear Fork's petition is less clear regarding the exact nature of the relief that is sought from Red Diamond. We note, however, that the liability (if any) of Red Diamond is largely contingent on the outcome of the Vasquez lawsuit, as well as the extent to which Berkley responds (or is made to respond) to the judgment.

Regardless, after Berkley and Red Diamond filed an answer to Clear Fork's lawsuit, Berkley immediately moved to abate on the grounds that its duty to pay under the excess policy could not be adjudicated until the underlying lawsuit had been resolved. *See, e.g.*, *Farmers Tex. Cnty. Mut. Ins. Co. v. Griffin*, 955 S.W.2d 81, 84 (Tex. 1997) (noting that "[i]t may sometimes be necessary to defer resolution of indemnity issues until the liability litigation is resolved"). Thereafter, on March 26, 2024, the trial court signed an order abating the entire case, including Clear Fork's claims for indemnity against Red Diamond.

Approximately six months after the trial court rendered the order abating the case, Clear Fork moved to lift the abatement of its claims against Red Diamond, arguing, among other things, that resolution of Clear Fork's claims against Red Diamond was necessary so that the parties could evaluate settlement offers and respond to settlement demands from the Vasquez family. On January 14, 2025, the trial court signed an order denying Clear Fork's motion to lift the abatement.

---

[1]Berkely has reserved the right to deny coverage for exemplary and/or punitive damages, as well as acts of conscious indifference and intentional acts.

Clear Fork filed its petition for writ of mandamus on May 9, 2025.  In the petition, Clear Fork requests that we issue an order requiring the trial court to (1) vacate or rescind the order granting the motion to abate as to claims against Red Diamond and (2) grant the motion to lift the abatement as to the claims against Red Diamond.

*Mandamus*

Mandamus is an "extraordinary" remedy that is "available only in limited circumstances."  *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992) (orig. proceeding).  A writ of mandamus will issue only if the trial court clearly abused its discretion, and the relator has no adequate remedy on appeal.  *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 135–36 (Tex. 2004).  With respect to the first requirement, a trial court abuses its discretion if it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law.  *In re Cerberus Cap. Mgmt., L.P.*, 164 S.W.3d 379, 382 (Tex. 2005) (orig. proceeding) (per curiam). In addition, because a trial court has no discretion in determining what the law is or in applying it to the facts, a trial court abuses its discretion if it fails to correctly analyze or apply the law.  *See Prudential*, 148 S.W.3d at 135; *see also In re J.B. Hunt Transp., Inc.*, 492 S.W.3d 287, 294 (Tex. 2016) (orig. proceeding).

*Laches*

In their response to the petition for mandamus, Berkley and Red Diamond argue that Clear Fork's petition for mandamus is barred under the doctrine of laches.

Mandamus is not an equitable remedy.  *Rivercenter Assocs. v. Rivera*, 858 S.W.2d 366, 367 (Tex. 1993).  However, its issuance is largely controlled by equitable principles.  *Id.*  "One such principle is that '[e]quity aids the diligent and not those who slumber on their rights.'"  *Id.* (quoting *Callahan v. Giles*, 155 S.W.2d 793, 795 (Tex. 1941); *see also In re Rino-K&K Compression, Inc.*, 656 S.W.3d 153,

161 (Tex. App.—Eastland 2022, orig. proceeding).  As such, a party may waive its right to mandamus relief where it "unduly or unreasonably delays filing a petition for mandamus relief . . . unless the delay is justified."  *In re Am. Airlines, Inc.*, 634 S.W.3d 38, 43 (Tex. 2021) (orig. proceeding).  This waiver can be characterized as an application of the equitable doctrine of laches.  *See, e.g.*, *In re Laibe Corp.*, 307 S.W.3d 314, 318 (Tex. 2010).  However, in addition to demonstrating unreasonable delay, the party seeking to invoke the doctrine of laches must demonstrate its own good faith, as well as a "detrimental change in position because of the delay."  *Id.* (citing *Rogers v. Ricane Enters., Inc.*, 772 S.W.2d 76, 80 (Tex.1989)); *see also In re Smith*, No. 11-03-00409-CV, 2004 WL 308664, at *1 (Tex. App.—Eastland Feb. 19, 2004, orig. proceeding) (mem. op.).

Although they argue extensively that Clear Fork has unreasonably delayed in bringing this mandamus action, Berkley and Red Diamond make no effort to demonstrate that they have been prejudiced as a result of such delay.  Accordingly, we conclude that laches does not operate to bar Clear Fork's petition for mandamus.  *See In re Payne*, 605 S.W.3d 240, 244 (Tex. App.—San Antonio 2020, orig. proceeding) (Irrespective of the petitioner's unreasonable delay in seeking mandamus, the real party in interest failed to demonstrate a detrimental change of position.); *In re Wagner*, 560 S.W.3d 309, 318 (Tex. App.—Houston [1st Dist.] 2017, orig. proceeding) (Laches was inapplicable in part because the real-parties-in-interest failed to show a detrimental change in position.); *In re Cypress Tex. Lloyds*, 437 S.W.3d 1, 6 (Tex. App.—Corpus Christi–Edinburg 2011, orig. proceeding) ("Although [the real party in interest] generally asserts that this delay has resulted in a 'detrimental' change in her position and increased costs of litigation, she has offered no specific evidence supporting or explaining this allegation.").

*Abatement*

In its first issue, Clear Fork argues that the trial court abused its discretion when it abated Clear Fork's claims for declaratory relief against Red Diamond.

"A court, in the exercise of its sound discretion, may abate an action for reasons of comity, convenience and orderly procedure." *Dolenz v. Cont'l Nat. Bank of Ft. Worth*, 620 S.W.2d 572, 575 (Tex. 1981) (quoting *Timon v. Dolan*, 244 S.W.2d 985, 987 (Tex. App.—San Antonio 1951, no writ); *see also Martin v. Cottonwood Creek Constr., LLC*, 560 S.W.3d 759, 764 (Tex. App.—Waco 2018, no pet.). In exercising such discretion, the court may consider "the practical results to be obtained, dictated by a consideration of the inherent interrelation of the subject matter of the two suits." *Dolenz*, 620 S.W.2d at 575 (quoting *Timon*, 244 S.W.2d at 987); *see also City of Irving v. Dallas/Fort Worth Intern. Airport Bd.*, 894 S.W.2d 456, 463 (Tex. App.—Fort Worth 1995, writ denied).

In its mandamus petition, Clear Fork asserts that the trial court rendered its order based on Berkley's request to abate the case, and that "[t]he rationale for abating disputes over an insurer's duty-to-pay does not apply to resolving Red Diamond's contractual duties to Clear Fork." Clear Fork further argues—as it did to the trial court—that the trial court's failure to move forward with the case creates "[u]ncertainty over Red Diamond's obligations" and that the "parties should know beforehand whether Red Diamond obtained the required coverage." While these are appropriate factors for the trial court to take into consideration in ruling on the motion to abate, they are not the only factors.

Clear Fork's suit for declaratory judgment seeks a determination of Red Diamond's and Berkley's duty to indemnify Clear Fork regarding the Vasquez lawsuit. "The facts actually established in the underlying suit control the duty to indemnify." *Pine Oak Builders, Inc. v. Great Am. Lloyds Ins. Co.*, 279 S.W.3d 650,

7

656 (Tex. 2009) (quoting *GuideOne Elite Ins. Co. v. Fielder Rd. Baptist Church*, 197 S.W.3d 305, 310 (Tex. 2006)). "[T]he duty to indemnify is triggered . . . by whether a plaintiff ultimately prevails on a claim covered by the policy." *Don's Bldg. Supply, Inc. v. OneBeacon Ins. Co.*, 267 S.W.3d 20, 31 n.41 (Tex. 2008); *see Trinity Universal Ins. Co. v. Cowan*, 945 S.W.2d 819, 821 (Tex. 1997) ("The duty to indemnify is triggered by the actual facts establishing liability in the underlying suit.").

With this principle in mind, the trial court could have recognized the possibility that some or all of the disputes in the declaratory judgment lawsuit would eventually become moot. For example, the finder of fact in the Vasquez lawsuit might determine that Clear Fork was not liable. Likewise, even if the Vasquez lawsuit resulted in a judgment against Clear Fork, it was possible that the trial court would render a judgment against Clear Fork that is within the limits of Berkley's primary coverage. In either instance, the outcome of the Vasquez lawsuit would likely narrow, if not eliminate, many of the issues that were then pending in the declaratory judgment lawsuit, resulting in a substantial savings of time and resources, for both the trial court and parties.

Furthermore, even if the judgment against Clear Fork in the Vasquez lawsuit exceeds the limits of Berkley's primary coverage, it is possible, based on the claims that Clear Fork has asserted, that Berkley will ultimately be responsible for satisfying the judgment in its entirety. In that event, the potential claims against Red Diamond might be limited or eliminated.

We conclude that, based on the practical considerations that were before the trial court, including the potential for outcomes in the Vasquez lawsuit that would eliminate, or reduce the scope of, many of the issues involving Red Diamond, the trial court could have reasonably concluded that the claims against Red Diamond

should be abated for purposes of convenience of the parties and/or a more orderly proceeding. *See Dolenz*, 620 S.W.2d at 575. As such, the trial court did not clearly abuse its discretion in granting the motion to abate as to Red Diamond.

We overrule Clear Fork's first issue. Furthermore, because we have determined that the trial court did not clearly abuse its discretion, we need not (and do not) address Red Diamond's second issue, which asserts that Red Diamond has no adequate remedy by appeal. TEX. R. APP. P. 47.1, 52.8(d); *see Prudential*, 148 S.W.3d at 135–36.

### This Court's Ruling

We deny Clear Fork's petition for writ of mandamus.


JOHN M. BAILEY
CHIEF JUSTICE


August 29, 2025

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.

9